All right, we're ready and Stevens against the Department of State, Ms. Glaser. Good morning, Your Honor. May it please the court, Nicolette Glaser on behalf of plaintiff appellant Professor Stevens. Your Honor, the court should reverse the grant of summary judgment and remand of these FOIA matters to the district court with direction that the agency conduct an adequate search. To assess the adequacy of the search performed here, the court should take and bear in mind the actual history of this case. First, as the record shows, there was few documents produced to Professor Stevens. Then the agency filed a premature motion for summary judgment, and only after Professor Stevens pointed to the glaring deficiency did the agency disclose that the subsequent search was performed. That didn't cover over 10,000 additional records. So, Ms. Glaser, can I ask you, I mean, it seems to me there are two really central issues here. One relates to the decision to weed through that rather large number of documents with an initial search, which I understand, as Steven says, was for purposes of prioritizing what would be produced first. But the critical point to me seems to be that the district court finds, and I took this as a finding of fact, that that agreement all along permitted her to come back and say, this isn't enough, you know, I need more, here's some more key words, let's keep working on it. And whether she waited six months to follow up on that, but she doesn't follow up with that opportunity to request further examination of these things until very late in the day. And so I took that as a finding of fact about what was the nature of that phone agreement, I believe, of August 18. The other thing that I think is important is that the question whether you think that, say, all of these documents at some point or another needed to be reviewed and that the department somehow left documents unresolved for either relevance or privilege or whatever the response may have been. Yes, Your Honor. With respect to the agreement, and that's what is unusual about this case, is that it appears that there was some sort of an agreement. I did not represent Professor Stevens at the time, so I don't have any personal knowledge. But Your Honor, the problem with that is that, again, as any requester, Professor Stevens was a lot better equipped to understand some of it, don't have an idea what in those documents, 10,000 documents are. Where did you get the number 10,000 from, by the way? I saw it. It's a transcript, Your Honor, if it's been produced in the appendix. There was a motion on summary judgment, the first one. And in response, I think the government disclosed to Judge Lee that they have conducted and uncovered potentially additional 10,000 potentially responsive records. Right. So here, let's stress that word potentially, because I understand you to be arguing that as soon as the government says there are potentially 10,000 documents that need to be either released or recorded somehow in a Vaughn Index, that that's it, that they've lost the ability to look at those documents and think, these deal with the weather one day. They don't actually either belong in a response or in a Vaughn Index. But you seem to say as soon as you've even briefly thought that it might be responsive, then it has to be processed more formally. I apologize if that was the impression that I made with the briefing. That's not the position, Your Honor, that we took below or I'm taking before the court. Once the potential records are disclosed, obviously they're not all documents. It seems like a lot of time they're not documents. They show up and I'm not sure how it will. What that trigger is that the government has an obligation to follow on the leads to find if they're responsive. And that's where the second search or subsequent search came in. But the problem with the original court, the question that the court posed is that until the actual declaration and Vaughn Indexes are producing a subsequent, Professor Stevens didn't know what was withheld and what actually was searched. So it's kind of FOIA requesters play with their hands tied behind their back because they first do not understand or they don't necessarily know what these documents are. They do not know what actually the agency maintains as a file system. And so in this particular case, this disagreement, as she put it in her declaration, is a breadcrumb so that she can get the most recent production. So she waited because she wanted the document. She was anticipated that a certain production will be made to her, but she's adamant that she did not waive her right to receive any document that is responsive. That doesn't mean that she... I'm perfectly prepared to believe that she did not waive that right in the initial agreement prioritizing these first key numbers. But at some point, if she doesn't follow up and say, I still need more, isn't that some sort of forfeiture? Well, Ioana, in a regular lawsuit, they may be, but here she needs to see the Vaughn here. And if you look at the declaration, what she says, they submitted the same declaration, pretty much, as in the first motion for summary judgment. Well, where did they search? Now, they didn't produce that before the summary judgment. So considering that the burden is on the government in a motion for summary judgment, it's unusual in that, but they bear the burden of proof. So she needs to see, because there's no discovery, she has no way of knowing what it is she doesn't have personal contact when we're having a different litigation that you expect when you dealt with somebody, you know what it is, your harm. Here she's asking for records because of her research. So until she saw the actual productions and the actual final motion for summary judgment, that is when she can take a look and says, no, there's something is wrong here. Like for example, I'll give an example. I mean, if you look at the declaration, the declarant buried the issue about what they did in a subsequent search into split footnotes. Nowhere does it say that they actually use her terms. And especially if you look at it, and in the email, she explained what that asterisk sensor is. It seems like according to footnote one, they actually searched for an asterisk sensor, but it's clear that that in research, I don't understand it, but in the research, it means that if you put an asterisk. It's very common in Boolean searches. It's a placeholder. So it means censored, censoring, censorship. And again, but this is something that she was thinking, and it seems like they put in sensor asterisks without any spirit. Maybe that's how this search might be the same, but it seems like she believed that if you put an asterisk to a particular term, that may be a viable additional basis for something to be pulled up. So until she saw this declaration, and until she saw the VON indexes, there would not be a waiver or forfeiture because she had no initial basis to seek or know what the government held. Your Honor, if I have the chance to reserve my one and a half minutes for rebuttal. Certainly, Counsel. Mr. Hartzler. May it please the Court, Counsel. My name is Alex Hartzler, and I represent the United States Department of State. The District Court's ruling granting summary judgment to the State Department should be affirmed because the District Court correctly found that the State Department complied with the Freedom of Information Act. The reason that the State Department complied with the Freedom of Information Act is because, number one, the Department conducted an adequate search for records responsive to the appellant's FOIA requests. Number two, the Department properly withheld certain information under one or more exemptions to the FOIA statute. And number three, where non-exempt information could be segregated from the information that was withheld, the Department reasonably did so. So, Mr. Hartzler, I have a question for you. The government apparently identified a certain number of at least potentially responsive documents. Maybe it was 10,000, maybe it was some other number. But my question for you is whether there's anything in this record to indicate that the government eventually weeded through those documents, all of them, to see whether any of them were responsive. You know, maybe 5,000 of them were and 5,000 weren't. I don't know. And in which case, if they were responsive, whether the government ultimately took the next step and determined whether they belonged in the Vaughn Index as protected by one of the exemptions from the statute or were redactable or in some other way. In other words, did the government apply a variety of different search terms depending on which FOIA request was being searched for? And that is what turned, actually, it was in the first of the three requests that the 10,000 documents were returned. It's at that point in the summer of 2017 that the parties   term agreement. So you think the 10,000, you're telling us that way back in 2015 or 2016, the government, the department identifies these 10,000 or so? I think that's right, Your Honor. It was 2017 in August when the parties reached the initial... Right, August 18. Of course, the record says you were part of this. It's a little awkward, but August 18, 2017, right? That's right, Your Honor. And so that was after the initial search was done. This is before there was any summary judgment practice happening. But that was just an oral agreement. That's not reduced to any kind of notes or writing, I take it? The State Department reported to the court in its September 2018 status report the nature of the agreement and that the parties had agreed that if Professor Stevens was unhappy with the resulting production, that the parties could then revisit the issue of what to do with the remaining unreviewed documents. So there were some unreviewed documents, and it's your position that the ball was in her court to say, I need you to keep working? That's correct, and that's what the district court found, and the district court did not abuse its discretion in so finding. There's, of course, ample case law giving judges leeway to manage their caseload and keep things moving, and the district judge was within his discretion to say, you know, listen, the appellant just waited too long before she came back to the State Department and said, I want you to review the other documents. But what if she had never said she, what if she had never waived the right for you to do that? I mean, plenty of times we'll see FOIA cases where a potentially large number of documents are responsive to the request, and the agency says, well, we're going review, you know, a thousand a year, or they're going to stage it so that their resources aren't swamped by some gigantic request. And you don't have to keep coming back every year and saying, and yes, I still want you to work. I think her position is that all along, you know, she wanted you to get through it all. It's just that she was trying to help both herself and state to get the most responsive documents up front. She certainly could have declined to enter into any agreement at all and said, no, I want you to review the 10,000 documents. And of course it would have taken the State Department a very long time to do that. And so it was in the appellant's interest to provide the additional 25 keywords that were presumably targeted to, you know, the issues that were of interest to her. The State Department, on the record, explicitly told the judge, here's the deal, we're going to use her additional 25 keywords, which are going to narrow the 10,000 universe. And if she's not happy with that production, we can revisit what to do. Maybe we get, you know, this is not in the record, but maybe we get more keywords as Ron suggested, or perhaps the appellant could have just asked the department to review the remainder without using any more keywords, but she didn't do it. And she knew in February, 2018, that the production was complete and that the State Department was preparing its summary judgment motion. And then a couple of months later, when that motion was filed, she said nothing. And then she, her lawyer filed his appearance and he said nothing. And then they asked for an extension to respond to the summary judgment motion. They said nothing about this. They blew their summary judgment response deadline and said nothing. This wasn't Ms. Glazer, this was a different lawyer. Finally, nine months after the production was complete was the first time we heard that Mr. Stevens was not happy with the report, or didn't abuse its discretion in finding that, you know, that was effectively waived. So you're saying this, this email of February 6th that you sent, indicating that the department's position was that it had done everything responsive to the three requests was done, was kind of the moment at which she had some obligation to speak up? Absolutely, Your Honor. The, the agreement in writing in front of the judge was that the department would perform the searches with the additional keywords that the appellant provided, and that if she was not happy with the result, they could revisit the issue. And, you know, the truth is probably that the district court would have been within his discretion to say otherwise and to say, oh, I know she waited a long time, but you know, there's no prejudice. Why don't you just search the other documents too, or look at the other documents too. But this is the nature of the wide discretion that district courts have in managing their cases. And we cited some FOIA cases for this principle and some, you know, analogous discovery cases where at some point you just have to do it or not. You can't just sit around and wait. We haven't gotten much into the adequacy of the search itself. Good faith, which this court found is, of course, presumed there's ample case law in that. The search being reasonably calculated to uncover responsive records, I invite the court to look through the declaration from the State Department's Director of Information Programs, Eric Stein, which describes in extensive detail the embassies, consulates, bureaus that were searched, which keywords were used for each bureau. It's a 35 page declaration with 90 paragraphs going into detail about this search that the they really scoured the globe to look for records that would be responsive to the appellant's FOIA requests. Were these records primarily electronic, which the notion of using keywords makes me think they are? They were, Your Honor. As far as the withholdings that the department made, you know, there's three categories that are still at issue. Classified information, information predicted by statute, and information predicted by the deliberative process privilege. You know, there's ample case law in all these topics as well. I invite, again, the court to look at the department's bond index and, you know, for the deliberative process privilege, for example, up and down the list, it's documents that are classic deliberative process, whether it's recommendations on what to include in a diplomatic cable, recommendations about how to handle a foreign ambassador. Up and down the line, it's classic deliberative process privilege information. And then on the third question of the reasonably segregable information, that's an argument that the appellant waived by not making it in front of the district court. But even if the court were to overlook the waiver, the department presented a declaration explaining that all the reasonably segregated information had been segregated and assertions like that are presumed to be true under the case law and the appellant could have asked for an in-camera review, but she didn't do that, possibly because there just weren't that many documents that were withheld in full in this case. There were a lot of documents. I thought there was some talk about an in-camera review. Certainly not with respect to information that was segregated, Your Honor. That argument was not presented by the appellant at all on summary judgment. It's possible there was some other context in which an in-camera review was mentioned, but the argument that the segregation was not reasonable, I don't believe, was presented on summary judgment to the district court. If the panel has no further questions, we would ask the district court's judgment to be affirmed. Thank you, Mr. Hartzler. Anything further, Ms. Blaser? Yes, Your Honor. If I can use my remaining time, I just want to some of the statements made. Actually, they were in the declaration made clear that certain of the files were paper files that were searched. So some were not, and that's the part of the issue that we have is there was no detail provided to explain how the agencies and the embassies are maintaining their filing system, and some have paper file for that. They didn't say they didn't have paper file. It just didn't reference them. It didn't reference whether their workstations were used, a search. It talks about the share file without an explanation of what that it is. Also, Your Honor, I want to bring in, if the court will look at the declaration, if you see in paragraph 60 to 74, it describes the search term of the initial search, not anything regarding to how the keyword, if there was an agreement, were used. That is when Ms. Stevens realized that their government has not performed what they have agreed to. We have two very vague and elusive footnotes, one and four, that talk about it. Nowhere there is a declaration that how and who used this keyword. So I believe the question here could not possibly be waiver or forfeiture because Ms. Stevens didn't know that until she heard prior counsel may have asked for more time, but part of it is because... Thank you, Ms. Glaser. I apologize, Your Honor. The case is taken under advisement.